NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM MICKENS, et al., | Civil Action No. 10-cv-05842 (SDW) |
| Plaintiffs, | |
| v. | **OPINION** |
| FORD MOTOR COMPANY, | August 5, 2011 |
| Defendants. | |

**WIGENTON**, District Judge.

Before the Court is defendant Ford Motor Company's ("Ford" or "Defendant") motion to dismiss ("Motion to Dismiss") the Class Action Complaint of plaintiff William Mickens ("Mickens" or "Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). Venue is proper under 28 U.S.C. § 1391(a). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons discussed below, Defendant's Motion to Dismiss is **GRANTED**. Plaintiff will have thirty days to amend the Complaint.

**PROCEDURAL AND FACTUAL BACKGROUND**

On December 27, 2004, Defendant Ford published a Technical Service Bulletin ("TSB"), disseminated only to authorized Ford dealers, announcing that twelve Ford, Lincoln, and Mercury models from 2000-2004 "may exhibit a bubbling or blistering under the paint on aluminum body parts" as a result of "iron contamination of the aluminum panel." (Compl. at ¶¶

15, 16, 22.) On September 29, 2005, Plaintiff purchased a new 2006 Ford Mustang from Fette Ford in Clifton, New Jersey. (*Id.* at ¶ 40.) Plaintiff's purchase included coverage under Ford's "Bumper to Bumper" warranty (the "Warranty"). (*Id.* at ¶ 41.) The Warranty provided that "authorized Ford Motor Company dealers will repair, replace, or adjust all parts on [the] vehicle that are defective in factory-supplied materials or workmanship" within three-years of purchase or 36,000 miles, whichever comes first. (*Id.* at ¶ 34.) On December 11, 2006, Defendant published a second TSB—again, disseminated only to authorized Ford dealers—announcing that fourteen Ford, Lincoln, and Mercury models from 2000-2007 "may exhibit a bubbling or blistering under the paint on aluminum body parts" as a result of "iron contamination of the aluminum panel." (*Id.* at ¶¶ 23, 24, 30.)

In June 2008, while still covered under the Warranty, Plaintiff noticed galvanic corrosion[1] on the hood of his car and subsequently delivered the car to Fette Ford for repairs. (Compl. at ¶ 42.) In compliance with the Warranty, Fette Ford performed a repair that temporarily cured the galvanic corrosion problem. (*Id.* at ¶ 42.) However, in June 2009, after the three-year life of the Warranty expired, Plaintiff again noticed galvanic corrosion on the hood of his car and returned it to Fette Ford for a second repair. (*Id.* at ¶ 43.) This second time, Fette Ford was unable to repair the galvanic corrosion despite attempts to do so. (*Id.*)

Between August 2009 and December 2009, Plaintiff's hood showed signs of worsening galvanic corrosion. (Compl. at ¶ 44.) Seeking to repair this problem, Plaintiff took his car back to Fette Ford at least three times. (*Id.*) Fette Ford was unable to repair the hood. (*Id.*)

---

[1] Galvanic corrosion is a chemical process that occurs when two metals with different electrode potentials come into contact with electricity. (Compl. at ¶ 9.) This contact causes the more active metal (the anode) to give up its electrons to the less active metal (the cathode). (*Id.*) Aluminum alloys, including the aluminum alloys used in the hood of Plaintiff's car, are anodic to most other metals. (*Id.* at ¶ 10.)

2

Plaintiff contacted Defendant Ford in December 2009 and January 2010 to notify the company of the problem. (*Id.* at ¶ 47.) Defendant responded by directing Plaintiff to Fette Ford's service manager to arrange for further repairs. (*Id.*) After a series of communications, in May 2010, Fette Ford's service manager informed Plaintiff that he would either have to purchase a new hood or pay for any further corrosion-related repairs himself. (*Id.* at ¶ 48.) Plaintiff chose not to make these repairs. (*See id.* at ¶ 50.) Instead, the galvanic corrosion problem on Plaintiff's hood persists to this day. (*Id.* at ¶ 51.)

On November 11, 2010, Plaintiff commenced this action by filing a two-count Class Action Complaint (the "Complaint").[2] (*Id.* at ¶ 54.) The First Count alleges a violation of the New Jersey "Lemon Law" (N.J. Stat. Ann. § 56:12-44 (West 2011)), which is actionable under the New Jersey Consumer Fraud Act ("CFA") (N.J. Stat. Ann. § 56:8-1 *et seq.* (West 2011)) for Defendant Ford's failure to properly certify a known defect with the New Jersey Division of Consumer Affairs in the Department of Law and Public Safety. (Compl. at ¶¶ 63-71.) The Second Count alleges unjust enrichment, essentially under the theory that Defendant, by selling a product it knew to be defective, reaped unfair benefits to the detriment of the Class.[3] (*Id.* at ¶¶ 72-77.) On January 28, 2011, Defendant filed the current Motion to Dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). On January 31, 2011, Ford filed a motion to dismiss Plaintiff's class certification and dismiss or strike Plaintiff's class allegations ("Motion to Strike"). On March 18, 2011, Plaintiff filed a motion to stay Ford's

---

[2] The Class, which Plaintiff moved to certify under Fed. R. Civ. P. 23(b)(3), includes purchasers of the following vehicles: 2000-2007 Ford Crown Victoria; 2000-2007 Ford Expedition; 2000-2007 Ford Explorer/Explorer Sport Trac.; 2000-2007 Ford F-150; 2005-2006 Ford GT; 2005-2007 Ford Mustang; 2000-2004 Ford Ranger; 2000-2007 Ford Taurus; 2000-2006 Lincoln LS; 2000-2007 Lincoln Navigator; 2000-2007 Lincoln Town Car; 2000-2007 Mercury Grand Marquis; 2000-2005 Mercury Mountaineer; and 2000-2007 Mercury Sable. (Compl. at ¶ 54; *see id.* at ¶ 55-62.)

[3] Plaintiff has consented to dismissal of his unjust enrichment claim (Count II). (Pl.'s Opp'n Br. at 16.) Accordingly, the Court will not consider Count II.

motion to dismiss Plaintiff's class certification and dismiss or strike Plaintiff's class allegations ("Motion to Stay").

**LEGAL STANDARD**

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief").

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The

4

> plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted) (quoting *Twombly*, 550 U.S. at 556–57, 570).

Determining whether allegations in a complaint are plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed for failure to show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.*

## DISCUSSION

As required by the legal standard, this court has accepted all of Plaintiff's factual allegations as true for the purpose of deciding the Motion to Dismiss. Plaintiff's pleadings include allegations that Defendant failed to comply with the New Jersey Lemon Law, Section 56:12-44, because Defendant failed to notify the Division of Consumer Affairs of the existence of an inherent design defect, and thus, Defendant should be held liable to the alleged Class[4] under the CFA. (Compl. at ¶ 69.)

**Violation of the New Jersey Consumer Fraud Act (N.J. S.A. 56:8-2) - Count I**

The New Jersey Lemon Law, Section 56:12-44, provides:

> A manufacturer . . . . shall certify to the division [of consumer affairs], within one year of discovery, the existence of any *inherent design defect* common to *all* motor vehicles of a particular model or make. Failure to comply with this constitutes an unlawful practice pursuant to [the CFA].

N.J. Stat. Ann. § 56:12-44 (emphasis added).

---

[4] See *infra* note 2 for a definition of the Class.

Generally, in this context, defects fall into one of two categories: manufacturing defects or design defects. *See Navarro v. George Koch & Sons, Inc.*, 512 A.2d 507, 517 (N.J. Super. App. Div. 1986 (citing *O'Brien v. Muskin Corp.*, 463 A.2d 298, 304 (N.J. 1983)). To determine whether a product contains a manufacturing defect, the "product may be measured against the same product as manufactured according to the manufacturer's standards. If the particular product used by the plaintiff fails to conform to those standards or other units of the same kind, it is [a manufacturing defect]." *Id.* (internal quotation omitted). A design defect, on the other hand, cannot be proven by a comparison to the manufacturer's standards; a design defect refers to whether all of the products of a particular line are defective.[5] *See id.* A design defect arises from a "policy decision that the product's usefulness is outweighed by its risk." *Id.*

In the instant matter, Defendant asserts that although Plaintiff may have plausibly pled a manufacturing defect, Plaintiff has not plausibly pled a design defect. (Def.'s Br. at 5-8.) In the Complaint before this Court, Plaintiff has not clearly pled a design defect as required under Section 56:12-44. The Complaint alleges that Defendant knew that aluminum hood panels for the subject vehicles were contaminated during manufacturing, making them susceptible to galvanic corrosion. (Compl. at ¶ 2.) The Complaint, however, does not allege that the aluminum hoods corrode by their very nature or that Defendant designed the subject models with the intent to install corrosive hoods. Further, Plaintiff does not plead that *all* of the subject vehicles were contaminated or that *all* of the subject vehicles actually experienced corrosion. Instead, Plaintiff refers to the 2004 TSB, which notes that the subject models "*may* exhibit a bubbling or blistering under the paint on aluminum body parts" as a result of "iron contamination of the aluminum

---

[5] The Lemon Law statute refers to a "design defect *common to all motor vehicles* of a particular model or make." N.J. Stat. Ann. § 56:12-44 (emphasis added).

panel." (Compl. at ¶¶ 15, 16.) (emphasis added). Plaintiff's specific allegations, as pled, refer more to a manufacturing defect than a design defect.

While the Complaint does contain some language referring to a design defect, pleading a manufacturing defect, while merely labeling it a "design defect" does not satisfy the plausible pleading standard. *See Iqbal*, 129 S. Ct. at 1949. As noted, while a court must accept as true all of the allegations contained in a complaint, that tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, while Plaintiff may have plausibly pled a manufacturing defect, Plaintiff has not pled a design defect as required under Section 56:12-44.

In addition, even if Plaintiff had plausibly pled a design defect, Plaintiff also failed to allege a sufficient causal link between the purported unlawful act (Defendant's failure to report an alleged design defect to the Division of Consumer Affairs) and Plaintiff's purported loss due to the corrosion on his vehicle's hood. Citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994), Plaintiff asserts that a regulatory violation is actionable under the CFA "even if no person was in fact misled or deceived thereby." (Pl.'s Opp'n Br. at 7.) However, the *Cox* case specifically states that "[a] practice can be *unlawful* even if no person was in fact misled or deceived thereby." *Cox*, 647 A.2d at 462 (emphasis added). Standing to bring a private action under the CFA, still requires proof of a causal relationship between the unlawful conduct and the alleged loss. *See Frederico v. Home Depot*, 507 F. 3d 188, 203 (3d Cir. 2007). Indeed, the relevant portion of the CFA that creates a private cause of action provides that "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, *as a result of* the use or employment by another person of any method, act, or practice declared unlawful under this act . .

. . may bring an action." N.J. Stat. Ann. § 56:8-19 (West 2011). Thus, Plaintiff must plead a causal link between the unlawful act and an ascertainable loss suffered by Plaintiff in order to state a private cause of action.

Plaintiff argues that he is not required to allege "individual reliance." (Pl.'s Opp'n Br. at 8). Further, Plaintiff asserts in his opposition brief that he plausibly pled a causal link because "[h]ad Ford provided the certification required by the Lemon Law, the Division of Consumer Affairs *might* have compelled Ford to correct the defects in the subject vehicles, saving Plaintiff and thousands of other customers the aggravation and expense of seeking an individual remedy for their galvanic corrosion problems." (Pl.'s Opp'n Br. at 10) (emphasis added). Plaintiff also argues that "had Ford certified the existence of the galvanic corrosion problem in December 2004, when it published the first galvanic corrosion TSB . . . . Plaintiff *might* have acted differently in not purchasing the vehicle or buying an extended warranty. (*Id.*) (emphasis added).

First, these statements are not evident in the Complaint and are not properly supported by the allegations in the Complaint, which is the focus of this Motion to Dismiss. Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frederico*, 507 F.3d at 202 (quoting *Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). Second, these statements alone are not sufficient to establish a causal link. Speculative assertions do not satisfy the plausible pleading standard. Indeed, "[i]t is exactly that kind of 'might be' pleading that the Supreme Court denigrated in Twombly." *Curran v. FedEx Ground Package Sys., Inc.*, 593 F. Supp. 2d 341, 344 (D. Mass. 2009).

8

Finally, Plaintiff has consented to dismissal of Count II, a claim for unjust enrichment. (Pl.'s Opp'n Br. at 16.)  Based on the foregoing, Defendant's Motion to Dismiss will be granted.

This Court has discretion to grant a party leave to amend its pleading under Federal Rule of Civil Procedure 15(a)(2).  A party may amend a pleading with the court's leave, which should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Accordingly, Plaintiff is granted thirty days to amend the Complaint.

## CONCLUSION

Accepting the facts in the pleadings as true and affording Plaintiff the benefit of all reasonable inferences in the light most favorable to him, this Court concludes that Plaintiff has not adequately pled his claims.  Defendant's Motion to Dismiss is **GRANTED**.  Plaintiff is hereby granted thirty days to amend the Complaint.

Defendant's Motion to Strike (Docket # 8) and Plaintiff's Motion to Stay (Docket # 16) are moot.

        s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
Cc:     Madeline Cox Arleo, U.S.M.J.
          Parties